**In re CODESCO, INC., Debtor.**

**Bankruptcy Nos. 80–B20283, 82–Adv–6138.**

United States Bankruptcy Court,
S.D. New York.

Nov. 17, 1982.

Anderson Russell Kill & Olick, P.C., New York City, for Thomas J. Cahill, Trustee; James P. Heffernan and Stephen J. Shimshak, New York City, of counsel.

Shearman & Sterling, New York City, for Citicorp Industrial Credit, Inc.

Friedman & Gass, P.C., New York City, for IU North America, Inc., Nixident, Inc. Tardydent, Inc., and PAC Finance Corp.

DECISION ON SECURED CREDITORS' MOTION TO DISMISS THE TRUSTEE'S COMPLAINT; TRUSTEE'S MOTION FOR A STAY UNDER CODE § 105(a) AND MOTION FOR A STAY BY ANOTHER SECURED CREDITOR.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The regrouping of the parties following the conversion of the debtor's Chapter 11 case to a Chapter 7 liquidation under the Bankruptcy Code has resulted in a certain amount of procedural skirmishing, reflected by the various motions now before the court. The defendants, IU North America, Inc. ("IU"), Nixident, Inc., Tardydent, Inc. and PAC Finance Corporation (collectively, the "IU Defendants") have moved for an order pursuant to Rules 12(b)(1), 12(b)(6) and 13(a) of the Federal Rules of Civil Procedure, as incorporated in Bankruptcy Rules 712 and 713 respectively, dismissing the complaint filed by the trustee in bankruptcy of Codesco, Inc., on the theory that the complaint alleges matters that are more appropriately the subject of compulsory counterclaims which had already been asserted by the erstwhile debtor-in-possession in the aborted Chapter 11 case in opposition to IU's request for relief from the automatic stay.

The trustee thereafter voluntarily dismissed the counterclaims asserted by the former debtor-in-possession in recognition of the proposition that a complaint seeking relief from the stay does not give rise to an obligation to assert counterclaims. Instead, the trustee relies upon the complaint that he filed which contains essentially the same charges as were formerly asserted by the debtor-in-possession as counterclaims in opposition to IU's application to vacate the stay. The IU defendants maintain that the trustee's complaint is defective because the trustee's causes of action should have been asserted only as compulsory counterclaims to the defendant's request for relief from the automatic stay.

Additionally, the trustee in bankruptcy is uncertain as to whether or not the automat-

ic stay imposed under 11 U.S.C. § 362 has terminated by operation of 11 U.S.C. § 362(e) because of the passage of more than thirty days since the filing of the request for relief. Consequently, the trustee requests that if the automatic stay has terminated by operation of law, the court should issue appropriate injunctive relief under 11 U.S.C. § 105(a) preventing the defendants from taking any action against the trustee or the estate without prior authorization of this court.

In view of the fact that the IU defendants have moved to dismiss the trustee's complaint, another defendant in that action, Citicorp Industrial Credit, Inc. ("CIC") has moved for an order staying the trustee from proceeding against CIC pending a determination of the IU defendants' motion addressed to the complaint.

## BACKGROUND

The debtor was formed in 1979 when it purchased from IU's subsidiary, Nixident, Inc., certain dental supply business assets. As part of the leverage financing of the purchase, Nixident took back a note from the debtor in partial payment for the assets, secured by a pledge of the debtor's accounts receivable and inventory. The note and security interest were assigned to the defendant, IU, and, thereafter, to the defendant PAC Finance Corporation. The defendant, CIC, also provided financing for the transaction and received in exchange certain security interests in the debtor's accounts receivable and inventory. CIC's advances have been repaid.

The debtor was unable to sustain its short economic life. On June 27, 1980, the debtor filed for relief under Chapter 11 of the Bankruptcy Code. On December 23, 1980, IU commenced an adversary proceeding against the debtor in order to obtain relief from the automatic stay and for permission to foreclose on the pledged collateral. The debtor answered IU's complaint by denying the basic allegations. The debtor also asserted certain counterclaims bottomed on the theory that the underlying transaction by which the debtor acquired its assets was fraudulent as against the debtor's then-existing or future creditors. The debtor also claimed that it received less than "a reasonable equivalent value" for the security interest and liens acquired by IU and that the debtor's remaining obligation to IU should equitably be subordinated to the claims of the debtor's unsecured creditors. The debtor also alleged that certain payments it made to IU should be avoided as preferential transfers.

With the consent of IU and the debtor, the hearing on IU's complaint for relief from the automatic stay was adjourned to February 23, 1981, more than thirty days after the filing of IU's request for relief on December 23, 1980.

In the interim, the debtor proposed to enter into a settlement with IU with respect to the charges asserted in the various pleadings. At the adjourned hearing on February 23, 1981, the creditors' committee opposed the settlement on the theory that the debtor and the secured creditors had allegedly engaged in questionable conduct in the formation of the debtor, to the detriment of the unsecured creditors, and that the proposed settlement mainly benefitted the secured creditors. In light of these facts, the court rejected a request of the creditors' committee to appoint a trustee and, instead, authorized the appointment of an examiner to investigate the affairs of the debtor in order to assist the court in determining whether or not the proposed settlement was in the best interests of all parties in interest. All pending matters were adjourned until the completion of the examiner's report.

Following the filing of the examiner's report on August 17, 1981, the court advised the parties that the proposed settlement would not be approved.

On January 8, 1982, at the request of the creditors' committee, an order was entered converting the case from Chapter 11 to Chapter 7. Thomas J. Cahill was thereafter elected Chapter 7 trustee pursuant to the requirements of 11 U.S.C. § 702(c). His election was approved by order dated March 4, 1982.

On August 4, 1982, the trustee filed with this court his complaint which seeks to set aside the underlying purchase transaction with the IU defendants as fraudulent. Except for the addition of Citicorp and PAC Finance as defendants, the facts and causes of action alleged in the trustee's complaint are substantially the same as those contained in the erstwhile debtor's counterclaims, which the trustee voluntarily dismissed after the IU defendants' motion addressed to his complaint.

## WERE THE COUNTERCLAIMS COMPULSORY?

■ The IU defendants premise their motion to dismiss the trustee's complaint on the theory that it contains allegations that should be raised only in the form of compulsory counterclaims to the IU defendants' prior request for relief from the automatic stay. ·Indeed, the defendants were originally faced with duplicitous allegations because not only had the former debtor in fact asserted counterclaims challenging the underlying transaction by which the IU defendants acquired their security interests, but the trustee in bankruptcy then asserted similar challenges to the transaction in his complaint. It is because of this duplicity that the IU defendants then moved to dismiss the complaint. Apparently the IU defendants would prefer to have the trustee assert his charges in the form of counterclaims in a litigation where IU is a plaintiff, rather than their having to respond to the trustee's charges in a new action where the IU parties are named as defendants.[1] The trustee attempted to eliminate the duplicity by voluntarily dismissing the former debtor's counterclaims pursuant to Rule 41(c) of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 741.

Basic to the defendants' motion to dismiss the trustee's complaint is the proposition that the pleading originally filed by IU is more than a procedural mechanism the sole purpose of which is to obtain relief from the automatic stay. The original IU pleading also contains substantive claims including a request for a determination of IU's entitlement to possession of the collateral. Moreover, the IU pleading seeks a declaratory judgment that IU holds a second security interest and is subrogated to the security interests granted to Citicorp in the debtor's property. The trustee argues in opposition that the coupling of a reclamation demand to a complaint for the lifting of an automatic stay does not trigger the obligation to assert counterclaims.

This court agrees with the trustee's position because the pleading of ancillary claims for relief in a complaint for a lifting of the automatic stay should not require a debtor or a trustee in bankruptcy to investigate and assert all available defenses and counterclaims in the accelerated and expedited hearing required under 11 U.S.C. § 362(e) at the risk of subsequent bar. The Legislative History with respect to adversary proceedings for relief from the automatic stay clearly expresses this point as follows:

"At the expedited hearing under subsection (e), and at all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustees to recover property of the estate or to object to the allowance of a claim."

---

1. The timing as to the pleadings is a significant factor because in order for IU to invoke the compulsory counterclaim rule it must be an opposing party against whom the other pleader has a claim "at the time of serving the pleading", as expressed in F.R.Civ.Proc. 13. The trustee argued that even if the compulsory counterclaim rule applies, IU cannot assert the rule because it assigned its claim to PAC Finance Corporation. However, IU asserts that the assignment did not occur until December 4, 1981, subsequent to the filing of the IU complaint for relief from the stay and after the debtor's answer and counterclaims.

House Report No. 95–595, 95th Cong., 1st Sess. (1977) 344; cf. Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 53, 55, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6300.

Indeed, a request for relief from the stay is not "a complaint in the orthodox sense which invokes the rule governing either compulsory or permissive counterclaims." *In re Racing Wheels, Inc.,* 5 B.R. 309, 312 (Bkrtcy.N.D.Ga.1980). A complaint is required for relief from a stay because Bankruptcy Rule 701(6) treats such litigation as calling for an adversary proceeding. Consequently, Bankruptcy Rule 703 prescribes that an adversary proceeding is commenced by filing a complaint with the court. In order to make clear that the expedited procedure under 11 U.S.C. § 362(e) does not contemplate the ordinary rules with respect to complaint and answer practice, the Proposed New Bankruptcy Rules provide that relief from the automatic stay pursuant to 11 U.S.C. § 362 should be by motion practice. See Proposed Rule 4001(a). The Advisory Committee Note following Proposed Rule 4001(a) amplifies this change in the following language:

"*Subdivision (a)* transforms what was an adversary proceeding under the former rules to motion practice. The Code provides automatic stays in several sections, *e.g.,* §§ 362(a), 1301(a), and in § 362(d) provides some grounds for relief from the stay. This rule specifies that the pleading seeking relief is by means of a motion. Thus the time period in Rule 7012 to answer a complaint would not be applicable and shorter periods may be fixed. Section 362(e) requires the preliminary hearing to be concluded within 30 days of its inception, *rendering ordinary complaint and answer practice inappropriate.*" [Emphasis added]

The IU defendants reason that the IU complaint should be viewed in its entirety and that the trustee has portrayed the IU complaint as half of what it is; focusing on the application for relief from the stay, while ignoring the action for reclamation of the collateral and proceeds. However, the IU defendants' position is rooted in a gross misinterpretation of the scope of the automatic stay under 11 U.S.C. § 362(a). The IU claim for reclamation, which it impermissibly coupled with its request for relief from the stay, constitutes an act to obtain possession of property of the estate in violation of 11 U.S.C. § 362(a)(3). Moreover, its cause of action to establish a secondary lien status violates 11 U.S.C. § 362(a)(4) to the extent IU seeks to enforce any lien against property of the estate. Unless and until the automatic stay is lifted, a creditor may not sue a debtor or a trustee to obtain results proscribed under 11 U.S.C. § 362(a). Hence, only half of the IU complaint need be recognized by the trustee, namely that portion which asks for relief from the stay. The other portion of the half-asked pleading needs no response.

Accordingly, the trustee properly dismissed the counterclaims he inherited from the erstwhile debtor's defense as to the IU request for relief from the automatic stay. The trustee's claims were thereafter more appropriately asserted in a complaint which commenced an independent adversary proceeding against the IU defendants. Therefore, the IU defendants' motion to dismiss the trustee's complaint, on the ground that it contains separate claims which require assertion of compulsory counterclaims to IU's request for relief from the automatic stay, is denied. It should be noted, however, that IU might give consideration to the compulsory counterclaim rule with respect to its response to the trustee's complaint, especially since IU contends that its substantive claims for reclamation and a declaratory judgment as to its secured status relate to and arise out of the same transaction or occurrence that is the subject matter of the trustee's complaint.

## INJUNCTIVE RELIEF

 The debtor and IU's agreement to adjourn the hearing on IU's complaint for relief from the automatic stay to February 23, 1981, more than thirty days after the filing of the complaint on December 23, 1980, without obtaining an order from the

court after notice and a hearing, as prescribed under 11 U.S.C. § 362(e), resulted in the automatic termination of the stay on January 23, 1982. Code § 362(e) is self-executing; the stay automatically terminates thirty days after a request for relief unless the court orders it continued or renders a decision. *In re Sandmar,* 16 B.R. 120 (Bkrtcy.N.Mex.1981); *In re Kleinsasser,* 12 B.R. 452 (Bkrtcy.S.Dak.1981); *In re Memphis,* 10 B.R. 306 (Bkrtcy.W.D.Tenn.1981); *In re Feimster,* 3 B.R. 11 (Bkrtcy.N.D.Ga. 1979). The further indefinite adjournment of the hearing on February 23, 1981 did not have any bearing on the duration of the stay because termination had already occurred by operation of law on January 23, 1981.

The trustee contends that the termination of the stay by operation of law was unintentional and inadvertent. Therefore, the trustee has moved for injunctive relief under 11 U.S.C. § 105(a) and Rule 65 of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 765.

The IU defendants argue that there are no threats of irreparable harm that are actual or imminent and say: "No injunction is required to prevent IU or PAC from seeking to reclaim the collateral; *IU already is doing so in the pending proceeding."* [Emphasis added] However, that is precisely the point; to the extent that IU sought a reclamation of property of the estate when it filed its complaint on December 23, 1980, it violated the automatic stay enjoining the commencement of lawsuits against the debtor. The trustee in bankruptcy is entitled to assurance that he will not suffer any further violations of the automatic stay by the IU parties. Consequently, the trustee should be granted injunctive relief under 11 U.S.C. § 105(a) preventing the IU parties from taking any action against the trustee or the estate without first receiving authorization from this court.[2] However, the defendants are free to assert any defenses or counterclaims

to the complaint filed by the trustee in this case.

### CIC's MOTION FOR A STAY

CIC argues that if the IU defendants' motion is granted, the complaint should also be dismissed against CIC. Therefore, CIC seeks a stay of the trustee's action against it pending a determination of the IU defendants' motion to dismiss the trustee's complaint. In view of the court's denial of the motion to dismiss, the CIC application for a stay is academic and, therefore, is denied.

SUBMIT ORDER on notice in accordance with the foregoing rulings.

---

**2.** § 105. Power of court.

 (a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.